29

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT MICHIGAN

UNITED STATES OF AMERICA

CASE NO. 2:16CR20751 (1)

JUDGE TARNOW

vs.

**DEFENDANT'S**
**MOTION TO REDUCE SENTENCE**
**FOR IMMEDIATE COMPASSIONATE**
**RELEASE DUE TO COVID-19**
**CIRCUMSTANCES**

**MARCO ANTONIO ANDRADE,**

Defendant

Comes now Defendant, Marco Andrade Pro-se respectfully moves this Court, pursuant to

18 U.S.C. § 3582(c)(1)(A)(i), for an order reducing his sentence to time served based on

the extraordinary and compelling circumstances that have presented through COVID-19

pandemic and the risks to Mr. Andrade who has medical risk factors for COVID-19 and

is due to be released in less than a year. Requiring defendant to remain in BOP custody

would pose an extraordinary and compelling health risk to him and to others.

Respectfully submitted,

*[signature]*

Marco Antonio Andrade
Inmate Number 55108-039
Federal Correctional Institution
Post Office Box 1000
Morgantown, West Virginia 26507-1000

## MEMORANDUM IN SUPPORT

### I.      Introduction and Procedural History

Mr. Andrade was indicted in the instant case on October 31, 2016.

The indictment charged Mr. Andrade with two controlled substance offenses: one count

of conspiracy to possess with the intent to distribute, controlled systems 1 kilo of heroin.

Mr. Andrade pleaded guilty to the indictment. This court imposed a sentence of

60 months upon Mr. Andrade and he surrendered to BOP custody shortly thereafter.

The Bureau of Prisons has calculated his release date as 10/31/2021.

Mr. Andrade is currently confined at Morgantown FCI. He attempted to request

compassionate release from the Warden at Morgantown FCI on 5/26/2020 and he

received a denial on 6/15/2020. Since 30 days has passed since his initial request,

Mr. Andrade has met the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A).

Due to the outbreak of COVID-19, Mr. Andrade asks this Court to terminate his

term of incarceration and order his release to home detention for the remainder of his

custodial sentence. The outbreak of COVID-19 is an extraordinary and compelling

circumstance that justifies a modification of his custodial sentence.

### II.     Legal Standards for Seeking Compassionate Release Under

###         18 U.S.C. 3582(c)(1)(A).

Prior to 2018, a district court could only receive a motion for sentence reduction

under 18 U.S.C. § 3582(c)(1)(A), known as a "compassionate release," upon a motion

from the Warden of the prison where the defendant was being held. The First Step Act of

2018 amended 18 U.S.C. § 3582(c)(1)(A) to allow district courts to modify sentences of imprisonment upon motion by the defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 603(b), 132 Stat.5 194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A)(i) authorizes the modification of a sentence of imprisonment if "extraordinary and compelling reasons warrant such reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," as set out in United States Sentencing Guideline § 1B1.13. This Court has discretion to reduce the term of imprisonment imposed in this case based on § 18 U.S.C. § 3582(c)(1)(A)(i), which states in relevant part that the Court "may reduce the term of imprisonment, after consideration of the factors set forth in section 3553(a) to the extent they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction," Pursuant to the requirement of 28 U.S.C. § 994(t), as authorized by 28 U.S.C. § 994(a)(2)(C), the Sentencing Commission promulgated a policy statement that sets out the criteria for a reduction in sentencing, which, as set forth in U.S.S.G. § 1B1.13 includes, in relevant part:

(1)(A)  extraordinary and compelling reasons warrant the reduction;

(2)      the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

Page 3 of  16

(3)     the reduction is consistent with this policy statement.

While the application note to § 1B1.13, is interpreting "extraordinary and compelling

reasons," focuses on medical and physical conditions, it specifically contemplates that

reasons not enumerated in the application note can qualify. App. Note 1(D) to

USSG § 1B1.13; *see also United States v. Arey,* No. 05-cr-29, 2020 WL 2464796 at #4

(W.D. Va. May 13, 2020) (collecting cases and concluding that "the amended

§ 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there

are 'extraordinary and compelling reasons' to reduce a sentence").

## III.     Exceptional Circumstances: COVID-19 Pandemic

The compassionate release statute permits this Court to reduce a defendant's

sentence upon consideration of the § 3553(a) factors, and upon a finding that there are

extraordinary and compelling reasons that warrant such a reduction. *See* 18 U.S.C.

§ 3582(c)(I)(A); U.S.S.G. § 1b1.13. The COVID-19 pandemic is an extraordinary and

compelling reason to consider a reduction. For the last two months, COVID-19 has

affected every part of the globe and affected all facets of normal daily living. Citizens in

the community have made changes to their daily routine and to how they physically

interact with others.

As of June 10, 2020, COVID-19 has infected over 7.2 million people, leading to

at least 410,000 deaths worldwide and 110,000 deaths in the United States.[1] On

---

[1]*Coronavirus Map: Tracking the Spread of the Outbreak,* The New York Times (Apr. 21,
2020, https://nyti.ms/2U4kmud (updating regularly).

March 11, 2020, the World Health Organization officially classified COVID-19 as a

pandemic,[2] and Governor Jim Justice declared a State of Emergency on March 16, 2020.[3]

Governor Justice issued a "stay at home" order on March 23 to prevent further spread of

the virus,[4] an order that was ultimately extended to May 3.[5] But West Virginia is easing

its restrictions in phases,[6] a move that most health experts believe is premature.[7] As of

June 10, 2020, there are 2188 confirmed cases of the virus in West Virginia, and 85

---

[2]*WHO Characterizes COVID-19 as a Pandemic,* World Health Organization (Mar.11, 2020), https://bit.ly/2W8dwpS.

[3]Dave Mistich & Kara Lofton, *W.Va. Governor Declares State of Emergency in Response to Coronavirus Threat,* WV Public Broadcasting (Mar. 16, 2020), http://wvpublic.org/post/wva-governor-declares-state-emergency-response-coronavirus-threat#stream/0.

[4]*COVID-19 Update: Gov. Justice Orders West Virginians to Stay Home; Announces Statewide Day of Prayer and More,* WV.gov (Mar. 23, 2020), http://governor.wv.gov/News/press-releases/2020/Pages/COVID-19-UPDATE-Gov.-Justice-orders-West-Virginians-to-stay-home;-announces-statewide-day-of-prayer-and-more.aspx.

[5]*Ohio Stay at Home Order Extended Through May 1,* Governor of Ohio (Apr. 2, 2020). Https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/ohio-stay-at-home-order-extended-through-may-1.

[6]*COVID-19 Update: New Responsible RestartOhio Opening Dates,* Ohio.gov (May 14, 2020). Http://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/covid19-update-may-14-2020.

[7]Leila Fadel, *Public Health Experts Say Many States Are Opening Too Soon to Do So Safely,* NPR (May 9, 2020, 7:00 AM), http://npr.org/2020/05/09/853052174/public-health-experts-say-many-states-are-opening-too-soon-to-do-so-safely.

people have died.[8] The COVID-19 pandemic is "clearly out of the ordinary, uncommon, or rare."

The CDC has issued guidance that all individuals take immediate preventative actions to minimize the spread of COVID-19, including avoiding crowded areas and staying home as much as possible.[9] The conditions in prisons do not allow for a vulnerable inmate to take the recommended preventive actions and create an ideal environment for the transmission of contagious disease.[10] Prison life places limitations on their ability to effectively combat this virus. Inmates cannot practice social distancing and are instead contained in crowded living pods. They have little to no control over the way in which their surroundings are cleaned and sterilized. Further, the sanitary conditions are substantially diminished as compared to the average community.

Inmates cycle in and out of prisons from all over, and people who work in the facilities leave and return daily, without effective screening. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep

---

[8]*COVID-19,* Ohio.gov, https://coronavirus.ohio.gov/wps/portal/gov/covid-19/home (Last visited May 21, 2020).

[9]*Social Distancing,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last visited May 7, 2020).

[10]Joseph A. Bick, *Infection Control in Jails and Prisons,* 45 Clinical Infectious Diseasees 1047 (2007), https://doi.org/10.1086/521910.

themselves safe;" "infection control is challenging in these settings."[11]

Outbreaks of the flu regularly occur in prisons, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[12] In China, officials confirmed the coronavirus spreading at a more rapid pace in Chinese prisons than among the general public, counting 500 cases.[13] Secretary of State Mike Pompeo called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[14] Courts across Iran have granted 100,000 inmates, or over half of Iran's total prison population, furlough as part of the measures to contain coronavirus across the country.[15]

The largest U.S. outbreaks of COVID-19 are all tied to jails and prisons. Marion

---

[11]Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States. (Mar. 2, 2020), https://bit.ly/2W9V60S.

[12]*Prisons and Jails are Vulnerable to COVID-19 Outbreaks,* The Verge (Mar.7, 2020), https://bit.ly/2TNcNZY.

[13]Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus as More than 500 Cases Have Erupted, Prompting the Ouster of Several Officials,* Business Insider (Feb. 21, 2020), https://bit.ly/2ySzSRT.

[14]Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak,* CNN (Mar. 10, 2020), https://cnn.it/2W40pV7.

[15]Parisa Hafezi, *Iran Extends Prison Furloughs as Coronavirus Death Toll Rises,* Reuters (Mar. 29, 2020, 10:43 AM), https://www.reuters.com/article/us-health-coronavirus-iran/iran-extends-prison-furloughs-as-coronavirus-death-toll-rises-idUSKBN21G0DV.

Correctional Institution, just 200 miles away, reported nearly two-thousand positive tests, over 75% of the prison population, on April 20, 2020.[16] The New York Times stated that even though four of the ten largest known sources of infection in the country at the time were jails or prisons, "those numbers are most likely a vast undercount, because [agencies like] the Federal Bureau of Prisons[ ] are not testing everyone who falls ill."[17] Prisons that have positive tests are likely to have similar infection numbers within a few weeks, regardless of their testing capabilities, making it nearly impossible for inmates to avoid even with the distancing measures that are available to prisons.

The Bureau of Prisons in particular has been in the spotlight for their poor handling of the COVID-19 outbreak. On March 31, 2020, due to the nationwide impact of COVID-19, the Bureau of Prisons issued a mandatory 14-day lockdown for all inmates in all BOP facilities.[18] That lockdown was later extended to May 18,[19] and then to June 30.[20]

---

[16]*Cases Surge in an Ohio Prison, Making It a Top U.S. Hot Spot,* N.Y. Times (Apr. 20, 2020), https://nytimes.com/2020/04/20/us/coronavirus-live-news.html.

[17]*Id.*

[18]Natasia Tsioulcas, *Prisoners Across U.S. Will Be Confined for 14 Days to Cut Coronavirus Spread,* NPR (Mar. 31, 2020, 8:25 PM), https://www.npr.org/sections/coronavirus-live-updates/2020/03/31/824917318/prisoners-across-country-will-be-confined-for-14-days-to-cut-coronavirus-spread.

[19]Maxine Bernstein, *Federal Inmates in Sheridan Are Finding Coronavirus Lockdown 'Overwhelming,' Public Defender Says,* Oregonian (Apr. 15, 2020), http://oregonlive.com/coronavirus/2020/04/ors-federal-public-defender-lockdown-at-federal-prison-to-avoid-spread-of-coronavirus-is-becoming-overwhelming-for-some-inmates.html.

[20]*COVID-19 Action Plan: Phase Seven,* Bureau of Prisons (May 20, 2020, 4:00 PM), http://bop.gov/resources/news/20200520_covid-19_phase_seven.isp.

But despite this lockdown, the spread of the virus has continued. And yet, the BOP does

not have the resources to regularly test inmates.

   While the BOP has not disclosed the extent of testing at most facilities, the testing

situation at nearby FCI Elkton, pursuant to public court filings, is dire. On April 1, 2020,

FCI Elkton reported three inmates had tested positive for COVID-19.[21] Only one day

later, Woodrow Taylor died of COVID-19, even though his COVID-19 test would not

return a positive result until April 3, a day *after* he died.[22] Since then, eight additional

inmates have died of COVID-19 at FCI Elkton.[23]

   Inmates at FCI Elkton filed a class-action habeas action in the Northern District of

Ohio on April 13, 2020.[24] On April 22, 2020, Judge James S. Gwin granted a preliminary

injunction and ordered all medically vulnerable inmates at FCI Elkton to be immediately

---

   [21]Rachel Polansky & Phil Trexler, *Exclusive: 3 Inmates Test Positive at Eastern Ohio Prison for COVID-19. Another 80 Are Showing Symptoms,* wkyc.com (Apr. 1, 2020, 6:08 PM). Https://www.wkyc.com/article/news/investigations/3-elkton-inmates-test-positive-for-covid-19-another-80-are-showing-symptoms/95-e24580c2-dd59-4c0a-9334-1aa061b4abbe.

   [22]Marcia Brown, *Inside a Federal Prison, Where Inmates Can't Stop Coughing,* American Prospect (Apr. 3, 2020, 4:48 PM), https://prospect.org/justice/inside-a-federal-prison-where-inmates-cant-stop-coughing.

   [23]*FCI Elkton Reports Ninth COVID-19 Death,* Mahoning Matter (May 8, 2020 2:01 PM0, http://mahoningmatters.com/local-news/fci-elkton-reports-ninth-covid-19-death-2335754; *see also* Evan MacDonald, *Family Left in Dark as Coronavirus Turned Akron Man's Stint at Elkton Federal Prison into 'Death Sentence,' Daughter Says,* Cleveland.com (Apr. 28, 2020), http://cleveland.com/court-justice/2020/94/family-left-in-dark-as-coronavirus-turned-akron-mans-stint-at-elkton-federal-prison-into-death-sentence-daughter-says.html.

   [24]Petition, ECF No. 1, *Wilson v. Williams,* No. 20-cr-794 (N.D. Ohio Apr. 13, 2020).

released to home detention or transferred to another location.[25] Judge Gwin found that the

number of COVID-specific tests at Elkton (only seventy-five for a prison with over 2000

inmates) was woefully inadequate and the expectation of twenty-five additional tests

arriving per week was "all but useless."[26]

Mr. Andrade reports a similar situation at Morgantown FCI. While he has been in

BOP lockdown, he has not been tested, instead only having his temperature taken weekly,

despite a fever not being a necessary symptom of COVID-19.[27] He is not aware of any

testing procedures that have been carried out or what the quarantine procedure is for

inmates. Despite the lockdown, he is still brought to get his food along with his entire cell

block, which includes approximately 70 people, and recreation time is still conducted in

large groups. A few cloth masks have been provided, but Mr. Andrade must reuse them

before he has an opportunity to wash them, contrary to the advice of medical experts.

Given these circumstances, Mr. Andrade's concern for his health and safety is real and

significant.

---

[25]Order of Preliminary Injunction, ECF No. 22, *Wilson v. Williams,* No. 20-cv-794, 2020
WL 1940882 (N.D. Ohio Apr. 22, 2020), at 20-21. This order was later vacated by the Sixth
Circuit, but the facts that Judge Gwin found were not the basis of the Sixth Circuit reversal.

[26]*Id.* At 4.

[27]Lisa Lockerd Maragakis, *Coronavirus Symptoms: Frequently Asked Questions,* John
Hopkins Medicine, http://hopkinsmedicine.org/health/conditions-and-
diseases/coronavirus/coronavirus-symptoms-frequently-asked-questions (last visited June 7,
2020).

IV.    **Mr. Andrade's Susceptibility to COVID-19 in Prison**

Mr. Andrade has a number of physical conditions and more specifically was just diagnosed with diabetes, by PA Corbin on July 2, 2020. Mr. Andrade had childhood asthma, but only his bronchitis remains at this time. Even still, since asthma is a core risk factor for COVID-19, this alone would put Mr. Andrade at unusual risk, especially given his decreased lung capacity. Chinese studies conclude that the fatality rate among people with lung disease is almost triple that of the general fatality rate.[28] The CDC's only advice is "to avoid being exposed to this virus."[29] This is virtually impossible for Mr. Andrade while in BOP custody.

And while our understanding of COVID-19 is rapidly evolving, it is becoming increasingly apparent that people in their 40s such as Mr. Andrade are more at risk from COVID-19's cardiovascular symptoms. And these effects can be severe: substantial clotting is common, if not expected, among COVID-19 patients, to the point where blood complications are likely the second leading cause of death from COVID-19, just behind

---

[28]Novel Coronavirus Pneumonia Emergency Response Epidemiology Team, *The Epidemiological Characteristics of an Outbreak of 2019 Novel Coronavirus Diseases (COVID-19) – China, 2020,* China CDC Weekly (Feb. 14, 2020), http://cdn.onb.it/2020/03/COVID-19.pdf.pdf.

[29]*People with Asthma,* Centers for Disease Control (Apr. 2, 2020), http://cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

respiratory distress.[30] Even otherwise healthy younger people with COVID-19 have been suffering from severe strokes and other clotting-related ailments wildly inconsistent with their age.[31] One doctor's report of a procedure to remove a clot from an otherwise healthy 44-year-old patient's head showed "new clots forming in real-time" in the patient's head as the procedure progressed.[32]

Many autopsies "have shown some people's lungs fill with hundreds of microclots,"[33] including over 70 percent of a sample of Chinese patients.[34] On April 17, 2020, a 41-year-old Broadway actor, who was otherwise healthy before being diagnosed with COVID-19, had his right leg amputated after blood clots blocked blood from circulating to his toes.[35] A Dutch study published April 10, 2020 found that among a group of COVID-19 patients in a single ICU, 31 percent presented with observable

---

[30]Ariana Eunjung Cha, *A Mysterious Blood-Clotting Complication is Killing Coronavirus Patients,* Wash. Post (Apr. 22, 2020, 4:39 PM), https://www.washingtonpost.com/health/2020/04/22/coronavirus-blood-clots/.

[31]Ariana Eunjung Cha, *Young and Middle-Aged People, Barely Sick with COVID-19, Are Dying of Strokes,* Wash. Post (Apr. 25, 2020, 2:12 PM), http://washingtonpost.com/health/2020/04/24/strokes-coronavirus-young-patients/.

[32]*Id.*

[33]Cha, *Blood-Clotting Complication, supra* note 30.

[34]Ning Tang et al., *Abnormal Coagulation Parameters Are Associated with Poor Prognosis in Patients with Novel Coronavirus Pneumonia,* 18 J. Thrombosis & Haemostasis 844, 845 (2020), http://onlinelibrary.wiley.com/doi/epdf/10.1111/jth.14768.

[35]Alex Young, *Broadway Actor Nick Cordero Has Leg Amputated Due to Coronavirus Complications,* Consequence of Sound (Apr. 19, 2020, 2:51 PM). http://consequenceofsound.net/2020/04/nick-cordero-leg-amputated-coronavirus/.

clotting abnormalities.[36] The authors stated that the true incidence was likely higher because some of the patients studied were still hospitalized and thus could develop similar abnormalities.

And Mr. Andrade pre-diabetes, which has just recently been diagnosed by the Bureau of Prisons, if Mr. Andrade is diagnosed with COVID-19, diabetes results in more severe complications, more hospitalizations and increased risk of diabetic complications such as diabetic ketoacidosis.[37]

Mr. Andrade has also been a regular smoker of cigarettes as noted in his PSR in the past, up until his surrender to BOP custody. This is his fourth core risk factor for COVID-19. The WHO has noted that smokers "are at higher risk of developing severe COVID-19 outcomes and death.[38]

Mr. Andrade has no reliable method of determining whether he has been infected, since he has not been tested to date. He will only likely find out if he starts exhibiting respiratory symptoms or suddenly suffers from a blood clot as described above. But even waiting for Mr. Andrade to develop symptoms, let alone test positive for COVID-19, is

---

[36]F.A. Klok et al, *Incidence of Thrombotic Complications in Critically Ill ICU Patients with COVID-19.* Thrombosis Research (2020), http://thrombosisresearch.com/article/S0049-3848(20)30120-1/pdf.

[37]*How COVID-19 Impacts People with Diabetes,* Am. Diabetes Ass'n, http://diabetes.org/coronavirus-covid-19/how-coronavirus-impacts-people-with-diabetes/ (last visited June 8, 2020).

[38]*Q&A: Tobacco and COVID-19,* World Health Org. (May 27, 2020), http://who.int/news-room/q-a-detail/q-a-on-tobacco-and-covid-19.

likely waiting too long. As previously mentioned, Woodrow Taylor, the first inmate to die at FCI Elkton, died on April 2, 2020, but his test did not return positive for COVID-19 until April 3, 2020.[39] Of the eight additional inmates who have died at FCI Elkton, at least two others had not tested positive by the time they had died.[40] Despite the obvious spread of cases at Elkton, the BOP was only able to direct 75 total COVID-19 tests to the prison between April 1, the date of the first reported positive test, and April 22, the date of the court order to release or move medically vulnerable inmates.[41]

Given the examples provided by Marion and by Elkton, transmission within Morgantown FCI is unlikely to cease until virtually every inmate, including Mr. Andrade is infected. As a result, the only way to minimize Mr. Andrade's risk of infection is to move him out of BOP custody. This Court should therefore conclude that extraordinary and compelling circumstances exist to order Mr. Andrade's release to home detention for the duration of his sentence.

---

[39] Marcia Brown, *Inside a Federal Prison, Where Inmates Can't Stop Coughing,* American Prospect (Apr. 3, 2020, 4:48 PM), https://prospect.org/justice/inside-a-federa-prison-where-inmates-cant-stop-coughing.

[40] Cory Shaffer, *Ohio National Guard Will Assist with Coronavirus Response at Elkton Federal Prison,* Cleveland.com (Apr. 6, 2020) (noting three "suspected" coronavirus-related deaths at FCI Elkton), https://www.cleveland.com/coronavirus/2020/04/ohio-national-guard-will-assist-with-coronavirus-response-at-elkton-federal-prison.html.

[41] Order of Preliminary Injunction, ECF No. 22, *Wilson v. Williams,* No. 20-cv-794, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020), at 3-4 (characterizing the 75 tests available to FCI Elkton at the time of the order as "all but useless").

**V.      Consideration of the § 3553(a) Factors Warrant the Reduction Requested**

In consideration of the § 3553(a) factors, an immediate release to home detention

is warranted. Mr. Andrade has substantial mitigating factors that warrant a reduction in

his sentence to time served. First, this Court is able to consider Mr. Andrade's

combination of medical concerns in assessing the § 3553(a) factors, and they strongly

favor release. In addition, Mr. Andrade is already due to be released in a matter of

months. And he has taken advantage of the programming available in BOP custody, and

completing some GED classes prior to the BOP's lockdown and enrolling in and

completing the 500 hour residential drug abuse program. Mr. Andrade does not have any

incident of disciplinary incident since being incarcerated. This is consistent with his

performance on bond during the pendency of this case, with zero violations over the

course of several months.

Mr. Andrade has retained the steadfast support of his family and friends. His wife,

Lourdes Arzola Andrade is willing to take Mr. Andrade for any period of home detention

this Court might order.[42] Mrs. Andrade works at Maria's Travel Agency International as

an office assistant, and Mr. Andrade will work for a construction company in Michigan

for which he has been employed for the last 27 years (see letter from Albanelli Cement

Contractors Inc.) Mr. Andrade's home detention would therefore be served at a stable

---

[42]Since this is a public filing, Ms. Alexander's contact information is not included here.
Defense counsel has this information and is willing to provide to this Court or to Probation when
it becomes necessary.

location within a stable household.

These facts and circumstances detail that granting the requested reduction will not jeopardize the public safety but that the § 3553(a) factors support a reduction. Mr. Andrade's continued detention risks exposure to COVID-19. Given the lack of testing or safeguards at FCI Morgantown, Mr. Andrade has a real and drastic fear of his health and safety by his continued detention. Therefore, he is in need of a compassionate release as permitted by 18 U.S.C. § 3582(C)(1)(A).[43]

## VI.   Conclusion

For the foregoing reasons, Mr. Andrade requests this Court grant him a sentence reduction as permitted by 18 U.S.C. § 3582(c)(1)(A)(i). These circumstances demonstrate extraordinary and compelling circumstances to justify a reduction in his custodial sentence. He asks this Court to order his immediate release to home confinement for the balance of his sentence.

Respectfully submitted,


Marco Antonio Andrade
Inmate Number 55108-039
FCI Morgantown
Post Office Box 1000
Morgantown, West Virginia 26507-1000

[43]Mr. Andrade requests that if this motion for compassionate release is granted, that this Court recommend to the BOP that he not be transferred through FTC Oklahoma City, so as to continue to minimize his exposure to COVID-19.

May 25, 2020

Warden F. J. Bowers
Case Management Coordinator
FCI Morgantown
446 Greenbag Road
Morgantown, West Virginia  26507

CERTIFIED MAIL

7017-2620-0000-2330-6858
5/25/2020

      Re:  Inmate Marco Antonio Andrade
          Registration Number 55108-039
          Compassionate Release and/or Sentence Reduction

Dear Warden Bowers,

      Enclosed please find a copy of my request for compassionate release
and/or sentence reduction pursuant to §3582 of the United States Code, and in
further compliance to U.S.C. §3553 for extraordinary and compelling reasons that
were not available to my sentencing judge at the time of my sentencing. Additionally
please construe the following in the most liberal sense allowing this document
to serve as a request for any and all sentence relief or reduction or direct
home confinement that are available to me as of May 25, 2020.

      Upon receipt of this request I am concurrently requesting relief and/or
reduction to the Warden and CMC through the Inmate Request to Staff dated May 25, 2020.
It is my understanding that I am specifically asking the Warden to review my
application as stated in the appropriate legislation available to me at FCI
Morgantown. Therefore please accept the foregoing as my official request for
any and all reduction, modifications extended home confinement available to
me and in accordance to recent legislation. I believe that the information contains
all of the pertinent information with regard to my request.

## COMPASSIONATE RELEASE, REDUCTION IN SENTENCE AND/OR MODIFICATION TO RRC PLACEMENT

      I respectfully request to be submitted for compassionate release and/or
sentence reduction/modification or extended RRC placement and referral in accordance
to the Bureau of Prison applicable Program Statements including but not limited
to 5050.50 and 18 U.S.C. §3582 (c)(1)(A) and §4205 (g), the First Step of 2018,
the newly inacted Cares Act as well as any and all available relief for which
I am eligible to recieve. Therefore per the criteria set forth I submit to you
the following information:

    1.   The extra ordinary and/or compelling reasons/circumstance that I believe
        warrant consideration are as follows:

        Requirements set forth by Attorney General William Barr

        a. I have served over 50% of my sentence
        b. I have a minimum risk of recidivism as determined by unit Team
        c. I've been scored as a minimum in violence

      d. I have had no incident report against me while incarcerated

      e. I have estabilished medical concerns as FCI Morgaotwns most recent April 29, 2020 early home confinement releases of which I am labeled as the same risk to those being released.

      f. I have a stable home to reside in located in Northville Michigan

      g. I have been offered to go back to work at my previous employer and accepted the employment.

      h. I have less than 18 months remaining on my sentence while many others have been release with far longer sentences remaining.

2. Current facts regarding COVID-19

<u>COVID-19 in the Bureau of Prisons and at FCI Morgantown</u>

      a. The coronavirus is a virus that very aggressively attacks human heart and lungs.

      b. As of May 15, 2020 over 3,385 inmates have tested positive for COVID-19 in at least 54 Bureau of Prison facilities

      c. Most imporatantly as sourced on www.bop.gov/coronavirus/index.jsp at least 56 inmates have died while in custody and due to complications of COVID-19.

      d. FCI Morgantown is currently the most populated Prison Camp in the Bureau of Prisons.

      e. Dense prison populations have proven extremely vulnerable to complication and infection of COVID-19

      f. Social distancing as required by The Center for Disease Control are impossible to followed due to FCI Morgantown style of living quarters with over 100 inmates living and using the same common areas and bunked one on top of another.

3. Proposed release pan, including where I will reside, how I will support myself, and where I will receive medical treatment, how I will pay for such treatment and how I can self quarantine.

<u>Self quarantine, employment , housing and midical availability.</u>

      a. Upon my release I will reside with my wife Lourdes Arzola at 42945 Whitesone Court in Northville, Michigan 48168.

      b. I will be employed by my previous employer and be provided health insurance by Albanelly Construction with whom I have worked for the previous 26 years while in society.

      c. My home has extra bedrooms which I can self-quaramtine in.

      d. There is a hospital within minutes of our home where I can be treated.

Wherefore, I respectfully request that you please submit me for the aforementioned relief for which I am entitles in accordance with the applicable program statements of the Bureau of Prisons, and pursuant to any applicable laws deemed relevant to my request. Thank you for your time, effort and assistance in this matter.


Respectfully submitted,


Marco Antonio Andrade
Inmate Number 55108-039
Post Office Box 1000
Morgantown, West Virginia 26507-1000

**CERTIFIED MAIL® RECEIPT**

*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

| | |
|---|---|
| Certified Mail Fee | |
| $ 3.55 | Randolph-Unit |
| Extra Services & Fees *(check box, add fee as appropriate)* | Marco Andrade |
| ☒ Return Receipt (hardcopy)  $ 2.85 | |
| ☐ Return Receipt (electronic)  $ | Postmark |
| ☐ Certified Mail Restricted Delivery  $ | Here |
| ☐ Adult Signature Required  $ | |
| ☐ Adult Signature Restricted Delivery  $ | |
| Postage | |
| $ 1.10 | |
| Total Postage and Fees | |
| $ 7.50 | |

Sent To
**Warden F.J. Bowers FCI Morgantown**
*Street and Apt. No., or PO Box No.*
**Post Office Box 1000**
*City, State, ZIP+4®*
**Morgantown, West Virginia 26507 1000**

PS Form 3800, April 2015 PSN 7530-02-000-9047  See Reverse for Instructions

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

A. Signature

X   J. Donahue                    ☐ Agent
                                  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
                                  5/26/20

1. Article Addressed to:

Warden F. J. Bowers
FCI Morgantown
Post Office Box 1000
Morgantown, West Virginia  26507

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail®      ☐ Priority Mail Express™
   ☐ Registered          ☒ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ Collect on Delivery
4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

   7017 2620 0000 2330 6838

PS Form 3811, July 2013          Domestic Return Receipt

*β*

## INMATE REQUEST TO STAFF MEMBER RESPONSE

**NAME:**   **Andrade, Marco Antonio**
**REG. NO.: 55108-039**

This is in response to your Inmate Request to Staff Member, received on May 27, 2020 in which you request consideration for a reduction in sentence (RIS)/compassionate release.  Specifically, you be considered due to Extraordinary or Compelling Circumstances.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner.  Your request has been evaluated consistent with this general guidance.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates.  We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus.  However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence.  Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

Date: __6|15|2020__

_____
F.J. Bowers, Warden

cc:  Medical Records
     Unit Team



CEMENT CONTRACTORS, INC.
**LIVONIA, MICHIGAN**

March 2, 2020

To Whom It May Concern:

Re:   Mr. Marco Andrade
        Inmate @ Morgantown, West Virginia Facility

This letter shall serve as confirmation that Mr. Marco Andrade will have his job reinstated as a concrete construction worker upon his release from the correctional system.

Mr. Andrade was a valuable and reliable employee during his time here. He was a good teacher to the young guys and always willing to help others.

Should you have any questions, please do not hesitate to contact me.

Respectfully submitted,

Wayne Albanelli
Vice President

WA/kac



**Individualized Reentry Plan - Program Review  (Inmate Copy)**

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: ANDRADE, MARCO ANTONIO  55108-039

SEQUENCE: 02119970

Team Date: 02-20-2020

Most Recent Payment Plan

** NO FRP DETAILS **

**FRP Assignment:**     **COMPLT**     **FINANC RESP-COMPLETED**          **Start: 08-23-2018**

Payments past 6 months:       **$0.00**               Obligation Balance: **$0.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|-----|------|--------|---------|---------|--------|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

**Payment Details**

Trust Fund Deposits - Past 6 months:   $2,668.00                Payments commensurate ?   Y

New Payment Plan:          ** No data **

**Progress since last review**

Mr. Andrade continues in the GED program and Education reviews state he is making good progress in his goal to obtain his GED.  He completed the Computer VT class and touch typing during this review period.  He has enrolled in the Welding certification program. Andrade is a participant of the Suicide Companion Cadre.

**Next Program Review Goals**

Mr. Andrade was screened vis FSA which showed he would benefit from cognition classes and continued education/vocational training.

Mr. Andrade is encouraged to enroll in one of these classes by his next team:

Anger Management (CBT program to manage anger)
START Now (program behavior disorders)
Criminal Thinking (rational behavioral therapy for addressing antisocial cognitions)
Basic Cognitive Skills (introductory program to CBT)
Embracing Interfaith Cooperation (fosters interfaith understanding
Houses of Healing: A prisoner's Guide to inner power and freedom (emotional literacy and understanding)
Victim Impact: Listen and Learn
Emotional Self-Regulation (CBT for managing personal emotions)

Mr. Andrade is encouraged to continue his participation in the GED program through completion of the GED.

**Long Term Goals**

Mr. Andrade is encouraged to enroll in the following after completion of his GED and prior to release:

Key Train for ACT Work Keys

Mr. Andrade is encouraged to complete his Welding certification prior to his release from incarceration.

Mr. Andrade is encouraged to enroll in a resume building class and submit a resume to his CSW by 4/2021.

**RRC/HC Placement**

Recommended Placement in a range between 151-180 days.
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources : RRCs available in his release area.
- Offense : Offenses are eligible for placment.
- Prisoner : Inmate plans to reside with his wife in Michigan.  He will need to obtain emploment.
- Court Statement : No comment.
- Sentencing Commission : No Comment.

Has a social security card and driver's license on file.  Naturalized Citizen.

**Comments**

PSYCHOLOGY SCREENING:
Trauma: ___No_____
Anger: ___No_____
Antisocial:__No_____
Criminal Cognition: ___Yes
Mental Health:____No_____



## Individualized Reentry Plan - Program Review (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: ANDRADE, MARCO ANTONIO 55108-039

SEQUENCE: 02119970
Team Date: 02-20-2020

| | | | |
|---|---|---|---|
| Facility: | MRG MORGANTOWN FCI | Proj. Rel. Date: | 10-31-2021 |
| Name: | ANDRADE, MARCO ANTONIO | Proj. Rel. Mthd: | 3621E COND |
| Register No.: | 55108-039 | DNA Status: | MRG05711 / 08-14-2018 |
| Age: | 43 | | |
| Date of Birth: | 10-11-1976 | | |

### Detainers

| Detaining Agency | Remarks |
|---|---|

*NO DETAINER*

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| MRG | ORD REC 2 | ORD REC 2 | 11-30-2018 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| MRG | ESL HAS | ENGLISH PROFICIENT | 08-20-2018 |
| MRG | GED EN | ENROLL GED NON-PROMOTABLE | 08-20-2018 |
| MRG | GED SAT | GED PROGRESS SATISFACTORY | 07-17-2019 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| MRG | | CROCHET CLASS | 01-22-2020 | CURRENT |
| MRG | | PAINTING CLASS | 01-21-2020 | CURRENT |
| MRG | | GED GARDNER - 9:30-11:00 | 10-03-2018 | CURRENT |
| MRG | | WELDING PM 12:00-3:00 PIERCE | 01-27-2020 | CURRENT |
| MRG | C | COMPUTER 1AM 7:30-10:30 SPAHR | 06-16-2019 | 11-24-2019 |
| MRG | C | TOUCHTYPING- MR. SPAHR | 06-16-2019 | 11-24-2019 |
| MRG | C | STAGE FORWARD GROUP | 05-17-2019 | 06-24-2019 |
| MRG | C | INFORMATIONAL HEALTH FAIR | 04-25-2019 | 04-25-2019 |
| MRG | C | ADVANCED LEATHERWORKING | 01-07-2019 | 03-11-2019 |
| MRG | C | LEATHERWORKING CLASS | 10-29-2018 | 01-07-2019 |
| MRG | W | GED GARDNER - 12:00-1:30 | 09-30-2018 | 10-03-2018 |
| MRG | C | RPP1 - AIDS/DISEASE PREVENT | 08-28-2018 | 08-28-2018 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

** *NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS* **

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 08-16-2018 |
| CARE1-MH | CARE1-MENTAL HEALTH | 10-04-2018 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| ATH RESTR | NO SPORTS/NO WEIGHT LIFTING | 10-10-2018 |
| LOWER BUNK | LOWER BUNK REQUIRED | 10-15-2018 |
| NO PAPER | NO PAPER MEDICAL RECORD | 08-20-2018 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 10-09-2019 |
| YES F/S | CLEARED FOR FOOD SERVICE | 08-23-2018 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP COMP | RES DRUG TRMT COMP/TRANS REQD | 08-05-2019 |
| ED EXEM | DRUG EDUCATION EXEMPT | 09-05-2018 |
| ELIGIBLE | 18 USC 3621 RELEASE ELIGIBLE | 09-21-2018 |
| FOL PART | FOLLOWUP SERVICES PARTICIPANT | 08-28-2019 |

### FRP Details



**Individualized Reentry Plan - Program Review (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: ANDRADE, MARCO ANTONIO  55108-039

SEQUENCE: 02119970
Team Date: 02-20-2020

FINANCIAL/POVERTY SCREEING:
Is there documentation in the PSR of any of the following?
NO Any history of Bankruptcy
No bank account_
No assets nor liabilities noted in PSR
no Debts noted in Credit Report or other sources
No Tax Liabilities/back taxesUnpaid alimony/child support __ other indications of lack of financial management skills
(specify)_____ YES _____ NO ___X_____ (if any of the above, check yes) If the answer is yes,
the inmate has a financial/poverty skills need.

EDUCATIONAL SCREENING:
WORK SCREEN
1) EVIDENCE EMPLOYED @LEAST 1YR: YES
2) EVIDENCE OF JOB CERT/CREDENTIAL: NO
3) WORK/VOCATIONAL NEED? YES
RECOMMEND WORK KEYS

DYSLEXIA SCREENING COMPLETE; THRESHOLD NOT MET

Mr. Andrade is a naturalized citizen.  He has a social security card on file.

FSA REVEW:  2/14/2020  FTC ELIG  RISK MINIMUM



**Individualized Reentry Plan - Program Review  (Inmate Copy)**

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: ANDRADE, MARCO ANTONIO  55108-039

SEQUENCE: 02119970

Team Date: 02-20-2020

| | | |
|---|---|---|
| Name: | ANDRADE, MARCO ANTONIO | DNA Status:   MRG05711 / 08-14-2018 |
| Register No.: | **55108-039** | |
| Age: | 43 | |
| Date of Birth: | 10-11-1976 | |

Inmate   (ANDRADE, MARCO ANTONIO. Register No.: 55108-039)

_____

Date

_____        _____

Unit Manager / Chairperson                                    Case Manager

_____        _____

Date                                                                    Date

```
   MRGEZ  606.00 *        MALE CUSTODY CLASSIFICATION FORM        *      02-15-2020
PAGE 001 OF 001                                                         08:07:17
                             (A) IDENTIFYING DATA
REG NO..: 55108-039              FORM DATE: 02-15-2020          ORG: MRG
NAME....: ANDRADE, MARCO ANTONIO
                                     MGTV: NONE
PUB SFTY: NONE                       MVED:
                          (B) BASE SCORING
DETAINER: (0) NONE               SEVERITY.......: (3) MODERATE
MOS REL.: 20                     CRIM HIST SCORE: (00) 0 POINTS
ESCAPES.: (0) NONE               VIOLENCE.......: (0) NONE
VOL SURR: (3) VOL SURR           AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (1) ENRLD + SAT IN GED DRUG/ALC ABUSE.: (1) <5 YEARS
                          (C) CUSTODY SCORING
TIME SERVED.....: (4) 26-75%     PROG PARTICIPAT: (2) GOOD
LIVING SKILLS...: (2) GOOD       TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE       FAMILY/COMMUN..: (4) GOOD


                    --- LEVEL AND CUSTODY SUMMARY ---

BASE CUST VARIANCE   SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY CONSIDER
 +4   +20    -4         0        MINIMUM      N/A            COM    SAME


  G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

July 27, 2020

Clerk of Courts
Thedore Levin United States Courthouse
231 West LaFayette Blvd.
Fifth Floor
Detroit, Michigan  48226

  Re: Defendant's Motion to Reduce Sentence for Immediate Compassionate Release
     Due to COVID-19 Circumstances for filing.

Dear Clerk of Courts,

    Enclosed please find the aforementioned motion for pro se filing for Marco
Antonio Andrade, inmate 55108-039. I have also enclosed a post addressed stamped
envelope hoping that you can send me a copy of the first page of the motion that
was time stamped by the court. I understand that I am suppose to provide a copy
of the first page however FCI Morgantown has been on lockdown due to the pandemic
and as such I did not have access to a copier. Should your office or the court
need to contact me please use my undersigned address.

Respectfully Submitted,

*Marco Antonio Andrade*

Marco Antonio Andrade
Inmate Number 55108-039
Federal Correctional Institution
Post Office Box 1000
Morgantown, West Virginia  26507-1000

Marco Antonio Andrade
Inmate Number 55108-039
Federal Correctional Institution
Post Office Box 1000
Morgantown, West Virginia 26507-1000



no post mark



RECEIVED
AUG - 5 2020
CLERK'S OFFICE
DETROIT

Clerk of Courts
Theadore Levin United States Courthouse
231 West Lafayette Blvd.
Fifth Floor
Detroit, Michigan 48226