UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

v.

MARCO ANTONIO ANDRADE,

  Defendant.

              /

Criminal Case No. 16-20751

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**OPINION AND ORDER GRANTING MARCO ANTONIO ANDRADE'S MOTION TO REDUCE SENTENCE [76], REDUCING HIS SENTENCE TO TIME SERVED, AND DISMISSING HIS MOTION FOR PLACEMENT IN A RCC/HALFWAY HOUSE [75] AS MOOT**

Defendant-petitioner, Marco Antonio Andrade, is serving a five-year term of imprisonment for conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841. (ECF No. 71, PageID.471). On August 5, 2020, Andrade filed a Motion to Reduce Sentence [76] pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 76, PageID.510). On August 17, 2020, the Court appointed the Federal Community Defender to represent Andrade and ordered the parties to file concurrent briefing and responses addressing Andrade's request for release. (ECF No. 77, PageID.540). The Court held a hearing on Andrade's Motion [76] on September 9, 2020. For the reasons stated on the record and in the

opinion below, Andrade's Motion [76] is **GRANTED**, and his sentence is reduced to time served.

## BACKGROUND

Andrade was born in Jalisco, Mexico in 1976. (PSR ¶ 37). His mother and father, a homemaker and farmworker, still reside there, as do several of his eight siblings (*Id.*). Though Andrade's needs were met as a child, he dropped out of school in the ninth grade so that he could seek work to help his family make ends meet. (PSR ¶¶ 39, 49). At age fifteen, Andrade relocated to the United States. (PSR ¶ 40). After spending two years in California, Andrade moved to Michigan, where he has lived ever since. (PSR ¶ 40). He was naturalized in 2002. (*Id.*).

Prior to his arrest for the instant offense, Andrade had no criminal history and had never been incarcerated. (PSR ¶ 39). Andrade had a history of substance abuse, however, dating back to the age of sixteen. (PSR ¶¶ 46-48). At the time of his PSR interview, he reported drinking heavily and was found to meet the criteria for a "relatively severe" drug problem. (PSR ¶¶ 46-47). Despite that problem, Andrade had been consistently employed in the cement industry for two decades prior to his incarceration. (PSR ¶¶ 50-52).

Andrade has been married twice. His first marriage lasted from 1992 until 2013 and yielded three children, with whom he remains close. (PSR ¶ 41). His

current marriage, which began in 2016, has remained intact despite his incarceration. (PSR ¶ 42).

Andrade's current case began in October 2016, when investigators started monitoring his telephone, believing him to be involved in drug distribution. (PSR ¶ 13). On October 31, 2016, investigators observed Andrade's co-defendant, Alex Leyva, get out of a vehicle and carry something into Andrade's vehicle. (PSR ¶ 14). Both vehicles were stopped by law enforcement. (*Id.*). Andrade, after being advised of and waiving his rights, admitted that he had received over a kilogram of heroin from Leyva, and was placed under arrest. (*Id.*).

Andrade pled guilty to one count of conspiracy to possess with intent to distribute one kilogram or more of heroin on February 2, 2017. (ECF No. 44). After determining that Andrade was eligible for the safety valve under 18 U.S.C. § 3553(f), the Court sentenced him to sixty months in prison on June 20, 2018. (ECF No. 71).

## ANALYSIS

Section 3582(c)(1) of Title 18 of the U.S. Code, colloquially known as the compassionate release statue, provides, in relevant part:

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that

> does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction.

18 U.S.C.A. § 3582(c)(1).

The Government does not dispute that Andrade has exhausted his administrative remedies. (ECF No. 82, PageID.578). Consequently, "[t]he Court now has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether [Andrade] poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors." *Crider v. United States*, No. 01-81028-1, 2020 U.S. Dist. LEXIS 133233, at *4 (E.D. Mich. July 28, 2020).

    A. <u>Extraordinary and Compelling Reasons for Release</u>

In order to ascertain whether there are extraordinary and compelling reasons to release Andrade, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Application Notes to the relevant policy statement provide the following:

> **1. Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and

compelling reasons exist under any of the circumstances set forth below:
- **(A) Medical Condition of the Defendant.—**
  - **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
  - **(ii)** The defendant is—
    - **(I)** suffering from a serious physical or medical condition,
    - **(II)** suffering from a serious functional or cognitive impairment, or
    - **(III)** experiencing deteriorating physical or mental health because of the aging process,
    
    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

  [. . .]
- **(D) Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13

Here, Andrade has presented "Other Reasons" in combination with his "Medical Condition[s]," to warrant compassionate release. Although only forty-three, Andrade's history of respiratory problems, obesity, and prediabetes puts him at an increased risk of severe illness from COVID-19, which is exacerbated by FCI Morgantown's failure to perform testing on a substantial portion of its occupants.

Andrade, a regular smoker prior to his incarceration, was diagnosed with an unspecified respiratory infection on October 1, 2018. (ECF No. 76, PageID.522; ECF No. 83, PageID.607). His medical records reflect that the infection was not resolved until September the following year. (*Id.*) According to the CDC, "[b]eing a current or former smoker may increase [one's] risk of severe illness from COVID-19." *People with Certain Medical Conditions*, CTRS. FOR DISEASE CTRL. & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 14, 2020) [hereinafter *People with Certain Medical Conditions*, CDC]. Moreover, because of the way in which COVID-19 attacks the respiratory system, Andrade's history of respiratory infection is cause for concern. *See, e.g.*, *COVID-19: Who's at Higher Risk of Serious Symptoms?*, MAYO CLINIC (Aug. 21, 2020), https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-who-is-at-risk/art-20483301 ("COVID-19 targets the lungs, so you're more likely to develop severe symptoms if you have preexisting lung problems.").

Andrade also has a history of obesity and prediabetes. Over the last two-and-a-half years, Andrade's Body Mass Index ("BMI") has fluctuated between 30.1 and 29.9.[1] (ECF No. 83, PageID.643). According to the CDC, "[h]aving obesity, defined

---

[1] The Government argues that Andrade is not sufficiently obese given that his most recent BMI is 29.9. (ECF No. 82, PageID.583). While the Government may be correct from a technical standpoint, the Court declines to deny relief on this ground. Andrade is 70 inches tall. (ECF No. 83, PageID.598). For an individual of Andrade's height, a weight of 209 pounds would mean a

as a body mass index (BMI) of 30 or above, increases [the] risk of severe illness from COVID-19." *People with Certain Medical Conditions,* CDC; *see* Jennifer Lighter et al., *Obesity in Patients Younger than 60 Years is a Risk Factor for COVID-19 Hospital Admission*, 71 CLINICAL INFECTIOUS DISEASES 896, 896 (2020) (finding that obese people under age sixty were twice as likely to need acute medical care as non-obese people of the same age). This risk is especially critical for younger individuals like Andrade. *See* Roni Caryn Rabin, *Obesity Linked to Severe Coronavirus Disease, Especially for Younger Patients*, N.Y. TIMES (Apr. 16, 2020), https://www.nytimes.com/2020/04/16/health/coronavirus-obesity-higher-risk.html.

Andrade's HbA1c levels, used to measure an individual's risk for diabetes, have also fluctuated, ranging from 6.1% to 5.6% over the course of three weeks in July 2020.[2] (ECF No. 83, PageID.643); *see All About Your A1C*, CTRS. FOR DISEASE CTRL. & PREVENTION, https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html (last visited Sept. 10, 2020) (explaining that "a level of 5.7% to 6.4%

---

BMI of 30—i.e. obesity. *See Body Mass Index Table 1*, NAT'L HEART, LUNG, AND BLOOD INST., https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmi_tbl.htm (last visited Sept. 10, 2020). At his last weigh-in, Andrade weighed 208.5 pounds. (ECF No. 83, PageID.631). In other words, if Andrade had weighed a half a pound more, his obesity would not be subject to question. Given that "weight tends to fluctuate, on average, between 2 to 4 pounds throughout the day," the Court finds Andrade's BMI to be no less concerning because of that half a pound. Heather Bauer, *Beware the Scale: Learn the Right Way to Weigh*, U.S. NEWS & WORLD REP. (Aug. 29, 2012), https://health.usnews.com/health-news/blogs/eat-run/2012/08/29/beware-the-scale-learn-the-right-way-to-weigh.

[2] As it did with BMI, the Court declines to accept the Government's invitation to ignore Andrade's HbA1c levels. While the Government is correct that Andrade's most recent HbA1c reading was technically outside the range for prediabetes, the Court's focus is on Andrade's very recent history of fluctuating with the range of concern, as demonstrated by the BOP's records.

indicates prediabetes). While prediabetes is not listed by the CDC as a risk factor for increased susceptibility to severe illness from COVID-19, diabetes is. *People with Certain Medical Conditions,* CDC. And it is well established that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id.* Consequently, "[c]ourts have found that the combination of prediabetes and obesity [is] sufficient to warrant [compassionate] release." *United States v. Readus*, No. 16-20827-1, 2020 U.S. Dist. LEXIS 89351, at *6 (E.D. Mich. May 21, 2020) (citing *United States v. Sosa*, No. 19-CR-39-02-JD, 2020 U.S. Dist. LEXIS 80884 (D.N.H. Apr. 21, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 80151 (D.N.H. May 6, 2020)).

In addition to his medical conditions, Andrade's risk is exacerbated by the Bureau of Prisons' ("BOP's") failure to perform widespread testing at FCI Morgantown. Despite having had nearly six months to perform tests, the BOP has tested only 88 of FCI Morgantown's 462 residents. *See COVID-19 Coronavirus*, FED. BUREAU PRISONS, https://www.bop.gov/coronavirus/ (last updated September 7, 2020) [hereinafter *COVID-19 Testing*, BOP]; *FCI Morgantown*, FED. BUREAU PRISONS, https://www.bop.gov/locations/institutions/mrg/ (last visited Sept. 7, 2020). The result is that FCI Morgantown currently reports zero active cases of COVID-19. *See COVID-19 Testing*, BOP. But courts in this district have noted that without regular testing, such a figure is "meaningless." *United States v. Doshi*, No.

13-cr-20349, 2020 U.S. Dist. LEXIS 88539, at *7 (E.D. Mich. May 20, 2020); *see, e.g.*, *United States v. Cooper*, No. 2:19-CR-20015-TGB, 2020 U.S. Dist. LEXIS 154809, at *6 (E.D. Mich. Aug. 26, 2020) ("Because COVID-19 can be spread by individuals who are asymptomatic or pre-symptomatic, whether the virus is spreading at Morgantown or not cannot reasonably be known by the Court [since little or no testing is currently being conducted there].").

In fact, with cases of COVID-19 proliferating in the area immediately surrounding the facility, prison staff coming in and out every day, and no regular testing of inmates, FCI Morgantown appears to the Court to be a COVID-19 hotspot waiting to happen. *See West Virginia Coronavirus Map and Case Count*, N.Y. TIMES (Sept. 10, 2020), https://www.nytimes.com/interactive/2020/us/west-virginia-coronavirus-cases.html (listing Monongalia County, where FCI Morgantown is located, as currently having the highest number of new cases of any county in the state, and describing a 58% increase in cases in West Virginia over the last fourteen days). Consequently, the Court finds that extraordinary and compelling reasons exist for Andrade's release.

B. <u>Dangerousness</u>

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In his two years of incarceration,

Andrade received zero disciplinary infractions and successfully completed the Residential Drug Abuse Program ("RDAP"), which not only addressed his substance abuse, but also the problematic patterns of thinking that got him into trouble in the first place. (ECF No. 76, PageID.533; ECF No. 81-4, PageID.564). Upon release, Andrade will have the support of both his wife, who was present for his hearing, and his former employer, who provided a letter to the Court advising that Andrade could have his old job back. (ECF No. 76, PageID.531). In light of Andrade's excellent record in prison, the willingness of his family and employer to support his reentry, and the BOP's assessment that he presents "minimum risk" of recidivism, the Court finds that Andrade does not present a danger upon release. (ECF No. 81-2, PageID.560).

    C.  <u>Section 3553(a) Factors</u>

The last step a district court contemplating a motion for compassionate release must take is to consider the sentencing factors provided by 18 U.S.C. § 3553(a). Those are as follows:

> **(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—

      **(A)**  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      **(B)**  to afford adequate deterrence to criminal conduct;
      **(C)**  to protect the public from further crimes of the defendant; and
      **(D)**  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
**(3)**  the kinds of sentences available;
**(4)**  the kinds of sentence and the sentencing range established for—
      **(A)**  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
      [. . .]
**(5)**  any pertinent policy statement—
      [. . .]
**(6)**  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
**(7)**  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)

      The Court's consideration of these factors is demonstrated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the September 9, 2020 hearing. Andrade's crime was serious and he earned the five-year sentence originally handed down by the Court. He did not, however, earn a sentence that would impact his health.

      Andrade has presented a credible release plan, and the quality of his time in prison demonstrates that he will be able to live a life free of crime upon release. Prior to the instant offense, Andrade had a clean record and had never been incarcerated.

(PSR ¶ 31). Consequently, the Court finds that the two-year period of incarceration Andrade has already served will sufficiently deter him from any future criminal activity—a conclusion buttressed by the BOP's assessment that he poses "minimum risk." The Court further finds that Andrade being caught and sentenced to five years imprisonment will sufficiently deter others who may have been in his circle from similar conduct.

In conclusion, the potential danger of Andrade's medical conditions, combined with the risk of COVID-19 at FCI Morgantown, outweighs any marginal benefit to be gained by Andrade serving the last several months of his sentence. A sentence reduction to time served is therefore in line with the § 3553(a) factors.

## CONCLUSION

**IT IS ORDERED** that Andrade's Motion to Reduce Sentence [76] is **GRANTED** and that his sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Andrade's Motion for Placement in a RCC/Halfway House [75] is **DISMISSED** as **MOOT**.

**IT IS FURTHER ORDERED** that Andrade be **IMMEDIATELY RELEASED** to begin his five-year term of **SUPERVISED RELEASE**, as outlined by the June 20, 2018 Judgment (ECF No. 71, PageID.473), including the following Special Conditions:

> **The defendant shall undergo a strict fourteen-day quarantine upon his release and shall fully comply with any applicable state or local**

**stay-at-home orders, social distancing guidelines, or other public health restrictions.**

**The defendant shall participate in a program approved by the probation department for substance abuse, which may include testing to determine if the defendant has revered to the use of drugs or alcohol, if necessary.**

**SO ORDERED**.

Dated: September 11, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge